FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★   ' 1 1 2005   ★
P.M. _____
TIME A.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------x
UNITED STATES OF AMERICA,

-against-

HORACIO LARRANGA LOPEZ,

Defendant.
----------------------------------------------------x

MEMORANDUM and ORDER

05-CR-655 (SLT)

**TOWNES, United States District Judge:**

Defendant, Horacio Larranga Lopez, brings this motion (1) to suppress statements defendant allegedly made on August 11 and 12, 2005; (2) to sever his trial from that of co-defendants Virginia Anaya and Robert Arellano and (3) to join in the suppression motion filed by Arellano, to the extent that that motion applies to his case. In connection with his motion to suppress statements, Lopez also moves for an order permitting his attorney to inspect portions of the DEA facility in which Lopez was held during the night of August 11-12, 2005. For the reasons set forth below, Lopez's motions are granted in part and denied in part.

## BACKGROUND

On August 8, 2005, Lopez's co-defendants, Robert Arellano and Virginia Anaya, were stopped by the police while driving a Ford Windstar ("the van") on Interstate 40 in Tennessee. The police searched the van, and recovered a quantity of drugs and other evidence. Arellano and Anaya were arrested, and almost immediately agreed to cooperate with the police.

As a result of this cooperation, Lopez was arrested at approximately 9:30 p.m. on August 11, 2005. According to the government, Lopez's cellular phone rang just as this arrest was taking place. The arresting officers or agents, apparently recognizing an opportunity to continue the investigation by having Lopez return the call, immediately asked Lopez to cooperate by placing a recorded phone call to a third party. Lopez agreed, and placed the recorded call.

According to the Government, "because it was late by the time the agents completed the defendant's booking, the agents felt that it would be beneficial for everyone to wait until the next morning to question [Lopez] and otherwise continue the investigation." Letter of AUSA Cameron Elliot to Hon. Sandra L. Townes, dated March 8, 2006 ("Gov't Response") at 2. Therefore, Lopez was held overnight at a DEA facility in anticipation of further cooperation the next day. However, on the morning of August 12, 2005, agents concluded that further investigation would be impractical and decided to arraign Lopez. Prior to that arraignment, Lopez was questioned by agents and made the statements which are the principal focus of the instant motion to suppress.

As filed, the instant motion consisted solely of a Notice of Motion and a Declaration by Lopez's counsel, Douglas G. Morris, Esq. (the "Declaration"). This Declaration, which states that it is partly based "on conversations with the defendant . . . Lopez," Declaration at ¶ 2, alleges that Lopez's August 11 statement – in which he agreed to cooperate and to place a call – was made before *Miranda* warnings were administered. In addition, the Declaration asserts that, although the government claims that an agent read Lopez his rights prior to the August 12 interrogation, "Lopez does not remember being advised of <u>Miranda</u> rights or waiving them." *Id.* at ¶ 5. With respect to this interrogation, the Declaration argues that the Government "obtained any statement from Mr. Lopez after he was deprived of sleep and food." *Id.* at ¶ 6.

The Declaration also seeks to sever Lopez's trial from that of his co-defendants on two separate theories. First, Lopez's counsel advances a *Bruton* theory, alleging that because both co-defendants have made statements incriminating Lopez, Lopez might be denied his rights to cross examine and confront these witnesses if Anaya and/or Arellano chose not to testify at a joint trial. *Id.* at ¶ 7. Second, relying on *United States v. Serpoosh*, 919 F.2d 835 (2d Cir. 1990),

2

Lopez's counsel argues that "it appears likely that Mr. Lopez and [his co-defendants] would have mutually antagonistic defenses," so that trying all defendants together "would deny each his right to a fair trial." *Id.* at ¶ 8. The Declaration also seeks "permission to join in any and all motions filed on behalf of . . . co-defendants." *Id.* at ¶ 9.

In response, the government argues that Lopez, who did not file an affidavit in support of the instant suppression motion, has failed to allege specific facts based on personal knowledge, and that this Court should therefore deny this motion without a hearing. In the alternative, the government argues that the August 12 statements were admissible because (1) Lopez was advised of, and waived, his *Miranda* rights prior to making the statements and (2) because his statement was voluntarily made. However, the government readily admits that Lopez was not read his *Miranda* rights before he expressed a willingness to cooperate and place the call on August 11, 2005, and consents not to offer this evidence upon its case in chief.

Although Lopez's motion only cites to 18 U.S.C. § 3501, the government interprets Lopez's motion as raising this ground for suppressing the August 12 statement. The government implicitly concedes that Lopez gave his statement more than six hours after his arrest and before he had been arraigned, but contends that the delay was reasonable (1) because the delay arose "from overnight housing while waiting for a magistrate" and (2) because Lopez's own cooperation "induced law enforcement to wait before interrogating him." Gov't Response at 5-6.

In response to Lopez's severance motion, the government states that, unless the co-defendants testify, it will redact the co-defendants' statements to eliminate any reference to Lopez, thereby avoiding the *Bruton* problem. With respect to Lopez's argument that severance is merited because of potentially "mutually antagonistic defense," the government argues that *Serpoosh*, on which Lopez relies, has been "abrogated" by the Supreme Court's decision in
3

*Zafiro v. United States*, 506 U.S. 534, 539 (1993). Finally, the Government argues that Lopez cannot join in Arellano's motion because he lacks standing to challenge the search of the van.

On March 14, 2006 – a few days prior to oral argument on these motions – Lopez's counsel applied for an order permitting him to inspect portions of the DEA facility in which his client was held during the night of August 11-12, 2005. This application does not explain precisely what defense counsel seeks to obtain through this inspection, and Lopez's counsel did not provide further specifics when asked at oral argument. Instead, Lopez's counsel stated:

> In order to represent my client on the Sixth Amendment and to try to protect also his Fifth Amendment rights, I have to observe the scene of the events in which the alleged interrogation took place, the alleged *Miranda* warnings were given. Both of them perhaps are insufficient to provide me with the information I need, because I can't visualize things from photographs of a location that I have never . . . personally seen. I can't see the angles. I can't see the details of the setting. In my experience, when I see photographs beforehand and then have gone to the place, I have always found that I have seen further aspects of the setting which are critical for my understanding of the setting in which the events took place.

Transcript of March 17, 2006, Oral Argument ("Transcript") at 4.

At oral argument, Lopez's counsel also proffered his client's declaration in an attempt to defuse the government's challenge to the sufficiency of his papers. That declaration, a signed copy of which was filed with the Court shortly after oral argument, states, in pertinent part:

> I do not remember being advised of <u>Miranda</u> rights after my arrest on August 11, 2005, either that evening or the following day. I do not remember having slept that night or morning, or having been provided food.

### DISCUSSION

<u>The Sufficiency of Lopez's Papers</u>

"An evidentiary hearing is normally required in motions to suppress where a factual issue is in dispute." *United States v. Cortez*, No. 05 CR 55 (DAS), 2005 WL 2861587, at *2

4

(S.D.N.Y. Oct. 27, 2005) (citing *United States v. Fruchter*, 104 F.Supp.2d 289, 308 (S.D.N.Y. 2000)). However, "[t]o create a factual dispute, defendant must submit sworn factual allegations from an affiant with personal knowledge." *Fruchter*, 104 F.Supp.2d at 308 (quoting *United States v. Urena-Pena*, 91 Cr. 946 (LLS), 1992 WL 17977, at *1 (S.D.N.Y. Jan. 24, 1992)). Where a defendant fails to present such factual allegations and no factual dispute is presented, no hearing is necessary. See *Cortez*, 2005 WL 2861587, at *2 (citing *United States v. Gillette*, 383 F.2d 843, 848 (2d Cir. 1967)).

Courts in this district have repeatedly denied hearings where defendants have failed to provide affidavits alleging facts based on personal knowledge. *See, e.g., United States v. Shaw*, 260 F.Supp.2d 567, 570 (E.D.N.Y. 2003); *United States v. Simpkins*, No. CR 96-750, 1996 WL 629567, at *1 (E.D.N.Y. Oct. 16, 1996); *United States v. Clement*, No. 94 CR 928 (SJ), 1995 WL 151786, at *2 (E.D.N.Y. Mar. 29, 1995); *United States v. Burmby*, No. 92 CR 721 (DRH), 1992 WL 373686, at *3 (E.D.N.Y. Nov. 30, 1992). In *Simpkins*, for example, the defendant did "not submit an affidavit of her own . . ., but merely an affidavit of her attorney . . . say[ing] that defendant [did] not recall being read her rights or waiving them." *Simpkins*, 1996 WL 629567, at *1. The *Simpkins* Court denied the suppression motion "on the ground that defendant . . . failed to provide an affidavit based on her own personal knowledge." *Id.*

Perhaps recognizing that his affidavit alone provided an insufficient factual basis for suppression, Lopez's counsel proffered his client's declaration at oral argument. However, that declaration does not affirmatively state that Lopez was denied sleep and food or was never read his *Miranda* rights. Rather, it states only that Lopez does not remember having been read his rights, having slept or having been provided with food.

5

This Court has located two district court opinions addressing the question of whether such an affidavit provides an adequate factual basis for a suppression motion. In the first – *United States v. Love*, 859 F.Supp. 725, 735 (S.D.N.Y. 1994), *aff'd*, 41 F.3d 1501 (2d Cir. 1994) and 100 F.3d 942 (2d Cir. 1996), *cert. denied*, 519 U.S. 951 (1996) – the government responded to a defendant's motion to suppress by submitting, *inter alia*, an affidavit averring that the defendant had been read his *Miranda* rights upon arrest. The defendant's reply, on the other hand, merely alleged that the defendant could not recall whether or not he was read his *Miranda* rights. The Court held that this reply was insufficient to raise an issue of fact; in light of the government's affidavit, the Court found that the defendant's "inability to recollect whether he was informed of his *Miranda* rights [did] not require suppression of his post-arrest statements." *Id.*, 859 F.Supp. at 735.

In the second case – *United States v. Cortez*, No. 95 CR 275 (RPP), 1995 WL 422029, at *2 (S.D.N.Y. July 18, 1995) – a district court held that a defendant's affirmation stating, "I do not recall any of the officers informing me of these *Miranda* rights or knowing of these rights on [the date she made the statement at issue]," provided sufficient factual basis for a hearing. The *Cortez* Court reasoned that this statement was "the equivalent of a denial," and therefore raised a factual issue as to whether the defendant had been advised of her *Miranda* rights. *Id.*

In this case, unlike *Love*, the government merely alleged that Lopez had received his *Miranda* rights, was allowed to sleep and was offered food and drink. It did not adduce any evidence to substantiate these allegations. On the other hand, Lopez's declaration, like the affidavit in *Cortez*, can be read as a denial of the government's representations. While the parties' papers could certainly be more thorough and persuasive, they suffice to raise issues of

fact which necessitate a hearing. Accordingly, this Court will grant Lopez a hearing on the issues of (1) whether the agents read Lopez his *Miranda* rights before the August 12, 2006, interrogation and (2) whether Lopez knowingly and voluntarily waived those rights and made a voluntary statement. In addition, since the Government concedes that Lopez was in custody and had not been advised of his *Miranda* rights at the time he agreed to cooperate and place a recorded call on August 11, 2005, the government will not be permitted to introduce Lopez's August 11, 2005, statements on its direct case.

This Court will also hold a hearing on what caused the more-than-six-hour delay between Lopez's arrest and his interrogation and arraignment. Although Lopez's motion papers only cite to 18 U.S.C. § 3501, the government's own papers establish a factual basis for suppression under this statute, which provides:

> In any criminal prosecution by the United States . . ., a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate judge or other officer empowered to commit persons charged with offenses against the laws of the United States . . . if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: *Provided*, That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate judge or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge or other officer.

18 U.S.C. § 3501(c) (emphasis in original). The Second Circuit has interpreted this subsection to mean that "if a defendant confesses more than six hours after the time of arrest and has not yet been arraigned, the delay in and of itself may justify suppression," unless the trial court finds that

"such delay was reasonable under the circumstances." *United States v. Perez*, 733 F.2d 1026, 1031 (2d Cir. 1984).

In its response to Lopez's suppression motion, the government tacitly concedes that Lopez gave his statement more than six hours after his arrest and before he had been arraigned. The government contends, however, that the delay was reasonable (1) because the delay arose "from overnight housing while waiting for a magistrate" and (2) because Lopez's own cooperation "induced law enforcement to wait before interrogating him." Gov't Response at 5-6. In support of the former argument, the government flatly asserts that Lopez was not arraigned earlier only because he "had been arrested after arraignment court closed for the day and before it reopened." *Id.* at 5. Yet, elsewhere in its response, the government contends that certain unnamed agents "felt that it would be beneficial for everyone to wait until the next morning to question [Lopez] and otherwise continue the investigation." *Id.* at 2.

These apparently conflicting statements create confusion as to what occasioned the delay in this case. In addition, the government has not presented any evidence to substantiate its second reasonableness argument: that Lopez's cooperation with the authorities somehow implied his agreement to delay his arraignment. Since "[t]he determination of whether a delay beyond the six-hour time limit is unreasonable is necessarily fact specific," *United States v. Palacio*, 735 F.Supp. 484, 487 (D. Conn. 1990), this Court will hold a hearing on whether the delay in questioning and arraigning Lopez was reasonable.

Severance

Lopez's motions for severance are denied. First, the government has defused the *Bruton* theory by agreeing to redact any non-testifying co-defendant's statements in order to eliminate any reference to Lopez. Second, the Government is correct in arguing (1) that Lopez has not

8

demonstrated the sort of mutually antagonistic defenses involved in *United States v. Serpoosh*, 919 F.2d 835, and (2) that *Zafiro v. United States*, 506 U.S. 534, overruled *Serpoosh*.

Even under *Serpoosh*, "[m]ere antagonism between the defenses" was not enough to require severance. *Serpoosh*, 919 F.2d at 837. As the *Serpoosh* Court stated, "the mere fact that codefendants seek to place the blame on each other is not the sort of antagonism that requires a severance." *Id.* (quoting *United States v. Villegas*, 899 F.2d 1324, 1346 (2d Cir. 1990)). Rather, severance was "required only when the jury, in order to believe the core of testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his codefendant . . . [or when] the jury will infer that both defendants are guilty solely due to the conflict." *Id.* at 838 (internal quotations and citations omitted).

The two defendants in *Serpoosh*, who had been arrested in a car containing a quantity of drugs, made out the sort of mutually antagonistic defenses that mandated severance. Both defendants gave detailed and mutually exclusive explanations of their conduct on the day of their arrest, and testified that they were the unwitting dupe of the other. Each defense counsel characterized the co-defendant as a liar who had concocted his story to shift the blame. On this record, the Second Circuit ruled that the trial court had erred in refusing to sever the case.

It is not yet clear whether the co-defendants in this case will rely on the same sort of antagonistic defenses as the co-defendants in *Serpoosh*. Lopez's counsel avoids committing himself to a specific defense, saying only that "it appears likely that Mr. Lopez and [his co-defendants] would have mutually antagonistic defenses." Declaration at ¶ 8. Lopez's counsel also does not allege his basis of knowledge concerning what defense his co-defendants intend to advance. Therefore, there is no factual basis for concluding that the three co-defendants intend to put on mutually antagonistic defenses.

Moreover, even assuming, *arguendo*, that they do, *Serpoosh* was overruled by *Zafiro*. *See United States v. Haynes*, 16 F.3d 29, 31-32 (2d Cir. 1994). The *Zafiro* Court made it "clear that '[m]utually antagonistic defenses are not prejudicial *per se*.'" *Id.* (quoting *Zafiro*, 506 U.S. at 538). Rather, the Supreme Court held that "a district court should grant a severance under [Fed. R. Crim. P.] 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Thus, the defendants in *Zafiro*, who argued that severance was necessary because they each claimed to be innocent and accused the other of the crime charged, had not made out "specific instances of prejudice" and were not entitled to severance. *Id.* at 539-40.

In this case, Lopez's attorney has not alleged specific instances of prejudice. At most, he has merely alleged mutually antagonistic defenses. This allegation, in and of itself, is insufficient to require severance. Accordingly, Lopez's motions for severance are denied.

<u>Joining in Arellano's Motion</u>

Co-defendant Arellano has moved pursuant to Fed. R. Crim. P. 12(3)(c) to suppress evidence obtained during the search of the van on August 8, 2005. Persons who lack a property or possessory interest in a vehicle or an interest in the property seized do not have standing to contest a search. *See Rakas v. Illinois*, 439 U.S. 128 (1978). Lopez has not alleged that he has either a property or a possessory interest in the van, or an interest in the items recovered from the van. Accordingly, Lopez lacks standing to join in Arellano's challenge to the search of the van.

<u>Lopez's Counsel's Motion to Inspect the DEA Facility</u>

Finally, Lopez's counsel requests that this Court issue an order allowing him to inspect "those parts of the Drug Enforcement Administration ("DEA") offices where . . . Lopez was

Moreover, even assuming, *arguendo*, that they do, *Serpoosh* was overruled by *Zafiro*. *See United States v. Haynes*, 16 F.3d 29, 31-32 (2d Cir. 1994). The *Zafiro* Court made it "clear that '[m]utually antagonistic defenses are not prejudicial *per se*.'" *Id.* (quoting *Zafiro*, 506 U.S. at 538). Rather, the Supreme Court held that "a district court should grant a severance under [Fed. R. Crim. P.] 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Thus, the defendants in *Zafiro*, who argued that severance was necessary because they each claimed to be innocent and accused the other of the crime charged, had not made out "specific instances of prejudice" and were not entitled to severance. *Id.* at 539-40.

In this case, Lopez's attorney has not alleged specific instances of prejudice. At most, he has merely alleged mutually antagonistic defenses. This allegation, in and of itself, is insufficient to require severance. Accordingly, Lopez's motions for severance are denied.

<u>Joining in Arellano's Motion</u>

Co-defendant Arellano has moved pursuant to Fed. R. Crim. P. 12(3)(c) to suppress evidence obtained during the search of the van on August 8, 2005. Persons who lack a property or possessory interest in a vehicle or an interest in the property seized do not have standing to contest a search. *See Rakas v. Illinois*, 439 U.S. 128 (1978). Lopez has not alleged that he has either a property or a possessory interest in the van, or an interest in the items recovered from the van. Accordingly, Lopez lacks standing to join in Arellano's challenge to the search of the van.

<u>Lopez's Counsel's Motion to Inspect the DEA Facility</u>

Finally, Lopez's counsel requests that this Court issue an order allowing him to inspect "those parts of the Drug Enforcement Administration ("DEA") offices where . . . Lopez was

housed and interviewed on August 11 and 12, 2006 . . . ." Letter of Douglas G. Morris, Esq., to Hon. Sandra L. Townes, dated Mar. 14, 2006, at 1. The DEA, however, opposes this request, arguing that this facility "frequently house[s] cooperating witnesses," and that the proposed inspection poses a security risk. Letter of AUSA Cameron Elliot to Hon. Sandra L. Townes, dated Mar. 15, 2006, at 1.

At oral argument, this Court attempted to balance Lopez's legitimate need for information concerning the circumstances surrounding his detention and interrogation against the government's security concerns by ordering the government – which had already provided defense counsel with photographs of the interview room – to provide (1) photographs of the cell in which plaintiff spent the night, (2) photographs of the hallway between the cell and the interview room and (3) the dimensions of the rooms. Transcript at 7-8. On March 24, 2006, the government filed a letter providing the approximate dimensions and six photographs, two of which had been filed previously. See Letter of AUSA Cameron Elliot to Hon. Sandra L. Townes, dated Mar. 24, 2006. These photographs, together with the descriptions and dimensions contained in the government's letter, provide a very vivid image of the relevant portions of the facility.

In response, Lopez's counsel submitted a letter dated March 27, 2006, in which he argues that he has a right under Fed. R. Crim. P. 16(a)(1)(E) to inspect the DEA facility. Rule 16(a)(1)(E) provides, in pertinent part:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places . . ., if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the

> government intends to use the item in its case-in-chief at trial; or
> (iii) the item was obtained from or belongs to the defendant.

However, this section does not entitle a criminal defendant to a "broad and blind fishing expedition among [items] possessed by the Government on the chance that something impeaching might turn up." *See Jencks v. United States*, 353 U.S. 657, 667 (1957) (quoting *Gordon v. United States*, 344 U.S. 414, 419 (1953)). At any time, a court may "for good cause, deny, restrict, or defer discovery or inspection or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1).

In this case, the government has shown "good cause" for denying inspection of the DEA facility and granting other appropriate relief. Although Lopez's counsel asserts that it would be "easy" for the DEA to comply with his request, *see* Letter of Douglas G. Morris, Esq., to Hon. Sandra L. Townes, dated March 27, 2006, at 4, the photographs produced by the government suggest the contrary. These photographs indicate that the door to the interview room is at the head of a hallway lined with cells. In order to accommodate Lopez's counsel's request, while protecting the identity of the cooperating witnesses housed in those cells, the DEA would have to move these detainees. The government represents that this would be unduly burdensome, and Lopez's counsel has not convinced this Court of the contrary.

Moreover, Lopez's counsel has not shown why the relief granted by this Court – namely the photographs and information concerning the dimensions of the rooms – is insufficient. He has not satisfactorily explained what additional information, aside from the information already provided in the government's March 24, 2006, letter, could possibly be obtained through a physical inspection of the DEA facility. At oral argument on March 17, 2006, Lopez's counsel stated only that the information provided by the government was "perhaps . . . insufficient to

provide him with the information" he needed. Transcript at 3. From these comments, it was readily apparent to this Court that Lopez's counsel himself was not sure what information he might obtain from his inspection.

Even if Lopez's counsel could articulate what additional probative evidence he could recover through a search of the DEA facility, his need to inspect the facility might be outweighed by the DEA's security concerns. However, since Lopez's counsel is merely speculating that the information provided by the government is "perhaps . . . insufficient," and cannot articulate what additional information he seeks to obtain, the government's security concerns outweigh the need to inspect the facility. Accordingly, Lopez's motion to inspect the DEA facility is denied.

## CONCLUSION

For the reasons stated above, Lopez's motions are granted to the extent of ordering a hearing on the issues of (1) whether the agents read Lopez his *Miranda* rights before the August 12, 2005, interrogation, (2) whether Lopez knowingly and voluntarily waived those rights and made a voluntary statement and (3) whether suppression is appropriate under 18 U.S.C. §3501(c). Lopez's motions are denied in all other respects.

**SO ORDERED.**

SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
March 31, 2006

13